HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELNA MARIE BERRY; BART BERRY;
GWINT L. FISHER; RENÉE FISHER; IRIS
RUIZ; GARET CUNNINGHAM; ROSALBA
RUIZ; SUZANNAH LUHN ANDERSON;
RYAN ANDERSON, DEBBIE ASHKAR and
STEVEN ASHKAR, individually and on behalf of
their minor son, C.A.; KENDRA FROME and
DAVID FROME, individually and on behalf of
her minor children J.F., H.F. and O.F.;
MARGARITA ANDERSON; JOSH
ANDERSON; MINHKIM BUI; MINHTAM BUI;
EVAN GRANGER; CHRISTOPHER
HICKMAN; TERESA HICKMAN; MEGAN
HUTCHENS; ELIZABETH LE; CONNER
MEJIA; JESSICA MONTOYA; ROBERT
MONTOYA; VI NGUYEN; MICHAEL
SIMENTAL and GRACE SIMENTAL,
individually and on behalf of their minor children
E.S. and K.S.; EVAN SMITH; LORRAINE
SMITH; DENISE STEWART; NATHANIEL
STEWART; GEORGE TATE JR., L'TOYA
WHEELER-TATE; MARY GRACE CATLE-
USTARIS; ROBERTO USTARIS; JENNIFER
WINEGAR; DARREN WINEGAR; KIRSTEN
WRIGHT; THOMAS KASTEN; ROBERT
WRIGHT; individually,

       Plaintiffs,

  v.

THE BOEING COMPANY, a Delaware profit
corporation; SPIRIT AEROSYSTEMS, INC., a
Delaware profit corporation; and ALASKA
AIRLINES, INC., an Alaska corporation,

       Defendants

Case No.:  2:24-cv-00134-RSM

SECOND AMENDED
COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND
PUNITIVE DAMAGES

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 1

1    Plaintiffs allege Defendants' negligence caused near catastrophic blowout of a fuselage

2  panel on Boeing 737 MAX 9 Alaska Airlines Flight 1282 on January 5, 2024, resulting in

3  personal injuries and damages. Plaintiffs also allege punitive damages against Defendant

4  Boeing.

5                                    **I.       THE PARTIES**

6  **The Plaintiffs:**

7    1.1    Plaintiffs Elna Marie Berry and Bart Berry are a married couple residing in

8  Venice, Florida. Plaintiff Elna Berry was a passenger in seat 18C. Plaintiff Bart Fisher brings a

9  loss of spousal consortium claim.

10    1.2    Plaintiffs Gwint L. Fisher and Renee Fisher are a married couple residing in

11  Long Beach, Washington. They were passengers in seats 16C and 16B, respectively.

12    1.3    Plaintiff Iris Ruiz is a resident of Vancouver, Washington. She was a passenger

13  in seat 18A.

14    1.4    Plaintiff Garet Cunningham resides in Corona, California. He was a passenger in

15  seat 28D.

16    1.5    Plaintiff Rosalba Ruiz resides in Corona, California. She was a passenger in seat

17  28E.

18    1.6    Plaintiffs Suzannah Luhn Anderson and Ryan Anderson reside in Portland,

19  Oregon. Plaintiff Suzannah Luhn Anderson was a passenger in seat 1C. Plaintiff Ryan

20  Anderson brings a loss of spousal consortium claim.

21

22

23

24

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 2

1.7    Plaintiffs Debbie Ashkar and Steven Ashkar are a married couple residing in Murietta, California. Their minor son, C.A. was an unaccompanied minor passenger in seat 20F. They bring claims as C.A.'s guardians and under RCW 4.24.010.

1.8    Plaintiff Kendra Frome and David Frome are a married couple residing in Redlands, California with their three minor children J.F., H.F. and O.F.  Plaintiff Kendra Frome and the children were passengers in seats 19D, 19E, and 19F, respectively (toddler J.F. was sitting on Kendra Frome's lap). Plaintiff David Frome brings a loss of spousal consortium claim.  Plaintiffs Kendra and David Frome bring claims individually, as guardians of their minor children, and under RCW 4.24.010.

1.9    Plaintiffs Margarita Anderson and Josh Anderson are a married couple residing in Tigard, Oregon. Plaintiff Margarita Anderson was a passenger in seat 21C. Plaintiff Josh Anderson brings a loss of spousal consortium claim.

1.10    Plaintiff Minhkim Bui resides in Salem, Oregon. She was a passenger in seat 29E.

1.11    Plaintiff Minhtam Bui resides in Salem, Oregon. She was a passenger in seat 29F.

1.12    Plaintiff Evan Granger resides in Vancouver, Washington. He was a passenger in seat 16F.

1.13    Plaintiff Christopher Hickman resides in Vancouver, Washington. He was a passenger in seat 8A.

1.14    Plaintiff Teresa Hickman resides in El Monte, California. She was a passenger in seat 8B.

SECOND AMENDED COMPLAINT FOR PERSONAL INJURIES, FRAUD, AND PUNITIVE DAMAGES - 3

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

1.15    Plaintiff Megan Hutchens resides in Keizer, Oregon. She was a passenger in seat 2F.

1.16    Plaintiff Elizabeth Le resides in Happy Valley, Oregon. She was a passenger in seat 29D.

1.17    Plaintiff Conner Mejia resides in Clackamas, Oregon. He was a passenger in seat 4D.

1.18    Plaintiffs Jessica Montoya and Robert Montoya are a married couple residing in Whittier, California. They were passengers in seats 31C and 31D, respectively.

1.19    Plaintiff Vi Nguyen resides in Beverton, Oregon. She was a passenger in seat 34E.

1.20    Plaintiffs Michael Simental and Grace Simental are a married couple residing in Salem, Oregon with their two minor children, E.S. and K.S. They were passengers in seats 24D, 24C, 24B, and 24A, respectively.  Plaintiffs Michael and Grace Simental bring claims individually, as guardians of their minor children, and under RCW 4.24.010.

1.21    Plaintiffs Evan Smith and Lorraine Smith are a married couple residing in Sun City, California. They were passengers in seats 20D and 20E, respectively.

1.22    Plaintiffs Denise Stewart and Nathaniel Stewart are a married couple residing in Corona, California. They were passengers in seats 24F and 24E, respectively.

1.23    George Tate, Jr. and L'Toya Wheeler-Tate are a married couple residing in Corona, California. Plaintiff George Tate, Jr. was a passenger in seat 6B. Plaintiff L'Toya Wheeler-Tate brings a loss of spousal consortium claim.

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 4

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

1.24    Plaintiffs Mary Grace Catle-Ustaris and Roberto Ustaris are a married couple residing in Marysville, Washington. Plaintiff Mary Grace Catle-Ustaris was a passenger in seat 29A. Plaintiff Roberto Ustaris brings a loss of spousal consortium claim.

1.25    Plaintiffs Jennifer Winegar and Darren Winegar are a married couple residing in Monmouth, Oregon.  Plaintiff Jennifer Winegar was a passenger in seat 7D. Plaintiff Darren Winegar brings a loss of spousal consortium claim.

1.26    Plaintiffs Kirsten Wright and Thomas Kasten are a married couple residing in Portland, Oregon. Plaintiff Kirsten Wright was a passenger in seat 9B. Plaintiff Thomas Kasten brings a loss of spousal consortium claim.

1.27    Plaintiff Robert Wright resides in Eugene, Oregon. He was a passenger in seat 9C.

**The Defendants:**

1.28    Defendant The Boeing Company ("Boeing") is a Delaware corporation with its corporate headquarters in Arlington, Virginia.

1.29    Defendant Boeing's principal place of business is in Seattle, WA 98108, where it owns, operates, manages and controls one of the largest aircraft manufacturing facilities in the world.

1.30    As of December 2023, 66,797 of Defendant Boeing's employees were located in the State of Washington.[1]

---

[1] https://www.boeing.com/company/general-info#global

SECOND AMENDED COMPLAINT FOR PERSONAL INJURIES, FRAUD, AND PUNITIVE DAMAGES - 5

1.31    The 737 MAX plane is assembled at the Boeing Everett Production facility along with the 767, 777 and 787 airplanes.  The Everett facility is heralded as the largest manufacturing building in the world. 30,000 Boeing employees work there.[2]

1.32    Defendant Boeing's 737 factory in Renton leads the industry as the most efficient airplane factory in the world. Renton manufactures all variants of the 737 and continues to produce the 737 MAX family of aircraft.[3]

1.33    The registered agent for Defendant Boeing is Corporation Service Company, 300 Deschutes Way SW, Suite 304, Tumwater, WA 98501.

1.34    Defendant Spirit AeroSystems, Inc. ("Spirit") is a corporation organized and existing under the laws of Delaware with its headquarters in Wichita, Kansas. Its registered agent for service of process in Washington is Corporation Service Company, 300 Deschutes Way SW, Ste. 208, MC-CSC1, Tumwater, WA 98501.

1.35    Defendant Spirit was part of Boeing Commercial Airlines until the sale of its Wichita division to an investment firm in 2005.

1.36    At all times material, Defendant Spirit was an agent of Defendant Boeing, acting within the course and scope of Spirits' duties as such in constructing the fuselage for the Aircraft.

1.37    Defendant Alaska Airlines, Inc. ("Alaska Air") is a corporation organized and existing under the laws of the state of Alaska with its headquarters in SeaTac, Washington. Its registered agent for service of process in Washington is Kyle Levine, 19300 International Blvd.,

---

[2] https://www.boeing.com/company/about-bca/everett-production-facility#anchor1
[3] https://www.boeing.com/company/about-bca/renton-production-facility#anchor4

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 6

Ste. 800, SeaTac, WA, 98188.  Defendant Alaska Air's principal business is the transportation of passengers on aircraft.

## II.    <u>JURISDICTION & VENUE</u>

2.1    This lawsuit was initially framed as a proposed class action and filed in King County Superior Court, State of Washington.

2.2     Without opposition from Plaintiffs, Defendant Boeing removed the case based on minimal diversity: "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).

2.3    Defendant Alaska Air consented to removal.[4]

2.4    Plaintiffs now withdraw the class allegations.  The Plaintiff group jointly asserts individual claims arising out of the same negligent conduct by Defendants and fraud by Defendant Boeing.

2.5    The Ninth Circuit and others have held that jurisdiction under 28 U.S.C. § 1332(d)(2)(A) does not depend on certification.  *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1092 (9th Cir. 2010); *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015).

2.6    This Court has ongoing subject matter jurisdiction over these claims.

2.7    Defendants are subject to personal jurisdiction in the Western District of Washington because they were served in Washington State pursuant to the law of the State of Washington and Fed. R. Civ. Pro. 4(h).  Defendants conduct regular business in the State of Washington.  Their conduct giving rise to the claims occurred in the State of Washington.

---

[4] Dkt. # 8.

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 7

2.8     Venue is proper in the Western District of Washington under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Washington, and because the Court has personal jurisdiction over these Defendants.

### III.     DEFENDANT BOEING 2015 FAA SAFETY AGREEMENT[5]

3.1     Following an enforcement action in 2015, the Federal Aviation Administration (FAA) found that during a time period starting in 2012, Defendant Boeing repeatedly failed to follow protocols designed to guard against production errors that put safety at risk.  Among other failures, tasks were signed off as completed and checked when they were not.

3.2     In 2015 the FAA and Defendant Boeing entered into a Settlement Agreement (2015 FAA Agreement) under authority of 49 U.S.C. Sections 40113, 46102(a) and 46301.[6]

3.3     The 2015 FAA Agreement included mandated improvements in the areas of: safety management, regulatory compliance, internal audit for regulatory compliance, specification improvement, audits of its suppliers, and compliance reporting.

3.4     To fulfill its legal obligations under the 2015 FAA Agreement, Defendant Boeing adopted the Safety Management Systems (SMS) Plan and was required to adhere to it. The SMS Plan was comprehensive and addressed all aspects of manufacture, operation, and safety.

3.5     To fulfill its legal obligations under the 2015 FAA Agreement, Defendant Boeing adopted the Regulatory Compliance Plan (RCP) to increase the focus and prioritization of its management on regulatory compliance and to prevent noncompliance.

---

[5] FAA Settlement Agreement 2015 (*See* Ex. 1 attached)
https://www.faa.gov/sites/faa.gov/files/2022-08/20151218-boeing-settlement-agreement.pdf
[6] *See id.*

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

3.6    To fulfill its legal obligations under the 2015 FAA Agreement, Defendant

Boeing was to ensure that its internal audit system was responsible for assessing all engineering,

supplier management, production, modification, repair, and customer support.

3.7    To fulfill its legal obligations under the 2015 FAA Agreement, Defendant

Boeing was to perform audits of its suppliers to determine whether any suppliers were accepting

work that was not complete and whether any such improper acceptance was systemic.

3.8    Defendant Boeing issued a statement on December 22, 2015, promising it would

"never compromise on our commitment to quality and compliance."[7]

### IV.    DEFENDANT BOEING 2021 FAA SETTLEMENT AGREEMENT[8]

4.1    In March 2019, the FAA grounded the 737 MAX following two mass casualty

crashes in Indonesia and Ethiopia that killed 346 people.[9]

4.2    Following an enforcement action, in 2021, the FAA and Boeing entered into a

Settlement Agreement (2021 FAA Agreement).

4.3    The parties agreed that Boeing should implement sustainable, enduring

corrective actions to address the root causes of certain regulatory violations and to prevent

similar future violations. And that regulatory compliance was critical to the quality and safety of

aircraft products.

4.4    To fulfill its legal obligations under the 2021 FAA Agreement, Defendant

Boeing was required to pay a civil penalty of $27,178,778.00.

---

[7] https://boeing.mediaroom.com/2015-12-22-Boeing-Statement-on-U-S-Federal-Aviation-Administration-Settlement
[8] FAA Settlement Agreement 2021 *(See* Ex. 2 attached*)*
[9] https://www.faa.gov/sites/faa.gov/files/2022-08/737_MAX_Timeline.pdf

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

4.5     To fulfill its legal obligations under the 2021 FAA Agreement, Defendant Boeing was required to implement a comprehensive review via its Boeing Problem Solving Model (BPSM) to ensure that Boeing had robust process controls in place.

4.6     To fulfill its legal obligations under the 2021 FAA Agreement, Defendant Boeing was required to address and mitigate the risk of aircraft with nonconformances produced by internal or external suppliers.

4.7     To fulfill its legal obligations under the 2021 FAA Agreement, Defendant Boeing was required to perform a Safety Risk Management (SRM) activity.

## V.     DEFENDANT BOEING 2021 CRIMINAL INFORMATION AND DOJ DEFERRED PROSECUTION AGREEMENT[10]

5.1     On January 7, 2021, the Department of Justice (DOJ) Fraud Section filed a criminal information against and simultaneously entered into a Deferred Prosecution Agreement (DPA) with Defendant Boeing.[i]  Court docket No. 4:21-CR-005-0 (N.D. Texas).   The criminal information charged:

> From at least in or around November 2016 through at least in or around December 2018, in the Northern District of Texas and elsewhere, the Defendant, THE BOEING COMPANY, knowingly and willfully, and with the intent to defraud, conspired and agreed together with others to defraud the United States by impairing, obstructing, defeating, and interfering with, by dishonest means, the lawful function of a United States government agency, to wit, the Federal Aviation Administration Aircraft Evaluation Group ("FAA AEG") within the United States Department of Transportation, in connection with the FAA AEG's evaluation of the Boeing 737 MAX airplane's Maneuvering Characteristics Augmentation System ("MCAS"), including for purposes of the 737 MAX Flight Standardization Board Report ("FSB Report") and the 737 MAX differences-training determination.

---

[10] https://www.justice.gov/criminal/criminal-fraud/case/united-states-v-boeing-company; Criminal Information and DPA attached as Ex. 3 and incorporated by reference.

5.2    Defendant Boeing admitted to one count of conspiracy to defraud the U.S. in violation of 18 U.S.C. § 371.

5.3    Acting Assistant Attorney General David P. Burns of the DOJ's Criminal Division stated: "Boeing's employees chose the path of profit over candor by concealing material information from the FAA concerning the operation of its 737 Max airplane and engaging in an effort to cover up their deception."[11]

5.4    The DPA was in effect for three years until January 7, 2024.

5.5    The DPA was in effect at the time of this incident.

5.6    Defendant Boeing is in breach of the DPA should it commit any U.S. federal felony during the term of the DPA, including providing any deliberately false, incomplete or misleading information; failing to implement a compliance program; or failing to completely perform or fulfil each obligation under the DPA.

5.7    Should Defendant Boeing breach any condition of the DPA, the U.S. Justice Department has the discretion to prosecute Boeing for the original crimes charged.

5.8    To fulfill its legal obligations under the 2021 DPA, Defendant Boeing was required to pay a total of $2.5 billion which included a criminal monetary penalty of $243.6 million.

5.9    To fulfill its legal obligations under the 2021 DPA, Defendant Boeing was required to cooperate with the DOJ Fraud Section in any future investigations.

5.10    To fulfill its legal obligations under the 2021 DPA, Defendant Boeing was required to strengthen its fraud compliance program.

---

[11] https://www.justice.gov/opa/pr/boeing-charged-737-max-fraud-conspiracy-and-agrees-pay-over-25-billion

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 11

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

5.11    To fulfill its legal obligations under the 2021 DPA, Defendant Boeing was required to create a safety committee of the board of directors.

5.12    To fulfill its legal obligations under the 2021 DPA, Defendant Boeing was required to create a product and services safety organization to strengthen and centralize the safety related functions that were previously located across Boeing.

## VI.    DEFENDANTS BOEING AND SPIRIT'S ONGOING 737 MAX SAFETY FAILURES PRE-INCIDENT

6.1    In early 2023, Defendant Boeing found improperly torqued bolts in landing gears and wing ribs of new build 737 MAXs in its Renton plant.

6.2    In March 2023, the FAA addressed improperly torqued bolts that hold down anti-ice exhaust ducts found on the bottom of 737 MAXs' CFM International Leap-1B turbofans.[12]

6.3    In April 2023, Defendant Boeing halted delivery of some 737 MAXs due to a supplier quality problem by Defendant Spirit stretching back to 2019.  Installation of two fittings that join the aft fuselage to the vertical tail were not attached correctly.[13]

6.4    In August 2023, Defendant Boeing found that Defendant Spirit improperly drilled holes on the aft pressure bulkheads of 737 MAXs.[14]  Defendant Spirit responded that because it used multiple suppliers, not all of the fuselages were impacted by the new "elongated" hole problem.

---

[12] https://www.flightglobal.com/airframers/boeing-tightens-procedures-to-address-bolt-torque-issue-at-renton-737-factory/152623.article
[13] https://www.reuters.com/business/aerospace-defense/boeing-pauses-deliveries-some-737-maxs-amid-new-supplier-problem-2023-04-13/
[14] https://www.reuters.com/business/aerospace-defense/new-boeing-737-max-supplier-defect-delay-aircraft-deliveries-2023-08-23/

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 12

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

6.5    In December 2023, an international operator discovery a bolt with a missing nut while performing routine maintenance involving the rudder-control linkage.  Defendant Boeing discovered a nut that was not properly tightened in an additional undelivered aircraft.  This resulted in issuance of a Multi-Operator Message, urging operators of newer planes to inspect for possible loose hardware.

6.6    In 2023, Defendant Boeing requested FAA exemptions for the 737 MAX related to: lightning and radiation protection rules, the engine anti-ice system, extended overwater operations, temperature and humidity in material durability, and the reliability of certain critical systems.[15]

## VII.    ACSAA EXPERT PANEL FINDINGS[16]

7.1    Pursuant to Section 103 of the 2020 Aircraft Certification, Safety, and Accountability Act (ACSAA) Pub.L. 116-260, Div. V, Sec. 103, an Expert Panel was convened on March 1, 2023, to review Defendant Boeing's safety management processes and their effectiveness for the design and production of transport airplanes.

7.2    The timeline in the Panel's report helped inform its work:

---

[15] https://www.airlinerwatch.com/2023/12/boeing-seeks-faa-exemptions-for-737-max.html#:~:text=Boeing%27s%20request%20for%20exemptions%20includes%20a%20temporary%20reprieve,such%20as%20temperature%20and%20humidity%20in%20material%20durability.
[16] Plaintiffs incorporate by reference the ACSAA Report attached as Ex. 4.
https://www.faa.gov/newsroom/Sec103_ExpertPanelReview_Report_Final.pdf

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 13

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

| Year | Events |
|------|--------|
| 2005 | • FAA establishes the Organization Designation Authorization (ODA) program, 14 CFR part 183 |
| 2009 | • FAA provides Letters of Designation authorizing Boeing to have multiple ODAs<br>• FAA publishes Advanced Notice of Proposed Rulemaking (ANPRM) for SMS for product/service providers |
| 2013 | • FAA grounds Model 787-8 airplanes, lithium-ion battery failures |
| 2015 | • As part of its settlement with the FAA involving multiple potential and pending enforcement cases, BCA pledges to implement its SMS plan that meets internationally accepted standards |
| 2018 | • Fatal accident involving a Model 737-700 (Next Generation) airplane, failure of the left engine and subsequent depressurization<br>• Fatal accident involving a Model 737-8 (MAX) airplane (Lion Air) |
| 2019 | • Fatal accident involving a Model 737-8 (MAX) airplane (Ethiopian Airlines)<br>• FAA grounds Models 737-8 and 737-9 (MAX) airplanes<br>• Boeing launches a Speak Up program for employees to report concerns confidentially<br>• Boeing's Board of Directors establishes an Aerospace Safety Committee to increase effectiveness of its oversight of safety in all aspects of operations |
| 2020 | • FAA accepts Boeing's voluntary SMS for BCA<br>• ACSAA Section 102, "Safety Management Systems," requires the FAA to promulgate SMS rules applicable to companies who hold both a Type Certificate and a Production Certificate |
| 2021 | • Boeing establishes the Chief Aerospace Safety Office (CASO) and appoints its first Chief Aerospace Safety Officer<br>• FAA determines BCA's SMS meets FAA's expectations and operates as intended<br>• Boeing uses its SMS to satisfy certain requirements of a 2021 Settlement Agreement between the FAA and Boeing<br>• Boeing introduces Seek, Speak, & Listen |
| 2022 | • FAA issues Notice N 8100.17, ODA Holder interference with ODA Unit Members (UMs) and Communication between UMs and the FAA<br>• Boeing establishes Office of the ODA Ombudsman |
| 2023 | • FAA issues Notice of Proposed Rulemaking (NPRM) proposing expansion of 14 CFR part 5 (SMS)<br>• FAA issues Notice N 8100.18, Updated Policy on ODA Holder interference with ODA UMs and Communication between UMs and the FAA<br>• ACSAA Section 103, Expert Review Panel convenes |
| 2024 | • Accident involving a Model 737-9 (MAX) airplane, detachment of a mid-cabin door plug<br>• FAA grounds Model 737-9 (MAX) airplanes<br>• Boeing increases efforts on safety and quality in response to the detachment of a mid-cabin door plug accident |

**Figure 2 –** *Milestones in Safety Management and ODA, and Significant Boeing Events*

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

7.3     The Panel found a disconnect between Defendant Boeing's senior management and other members regarding safety culture including: whether safety reporting systems ensured communication and non-retaliation, and inadequate and confusing implementation of the components of a positive safety culture.

7.4     The Panel found SMS procures were not structured to ensure all employees understood their role in the SMS including employee confusion regarding procedures and training among different work sites and employee groups.

7.5     The Panel found a lack of awareness of safety-related metrics at all levels.

7.6     Defendant Boeing's deficiencies as determined by the Panel existed despite its supposed adoption of Dr. James Reason's safety culture model reflected in the International Civil Aviation Organization Safety Management Manual: Reporting Culture, Just Culture, Flexible Culture, Learning Culture and Informed Culture.

## VIII.   THE AIRCRAFT

8.1     Defendant Boeing is the manufacturer of the Aircraft within the meaning of the Washington Product Liability Act, Chapter 7.72 RCW.

8.2     Defendant Boeing designed, made, fabricated, constructed, and/or remanufactured, and/or had the contractual and/or designated responsibility to design, make, fabricate, construct and/or remanufacture, and/or marketed or branded under its name, some or all of the Aircraft, including but not limited to its left MED plug assembly.

8.3     Defendant Boeing conducted final assembly and inspection of the Aircraft at its manufacturing plant in Renton, Washington.

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 15

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

8.4     Defendant Boeing is the type certificate holder for the Aircraft. Under Washington law and under the Federal Aviation Regulations, it is responsible for the safety of design and maintenance instructions as well as continuing airworthiness of the aircraft.

8.5     The Aircraft received its airworthiness certificate on October 25, 2023.

8.6     The Aircraft received its FAA registration certificate on November 2, 2023.

8.7     Defendant Alaska Air upon its purchase of the Aircraft and at all material times was the registered owner of the Aircraft.

8.8     Defendant Alaska Air took delivery of the Aircraft from Defendant Boeing on October 31, 2023.

8.9     Defendant Alaska Air put the Aircraft in service on November 11, 2023 in the state of Washington.

8.10    At the time of the incident the Aircraft had accumulated 510 total hours and 154 cycles.[17]

8.11    The Airplane was equipped with an MED plug option which Defendant Alaska Air selected based on its desired seating configuration.

8.12    This diagram from Defendant Boeing shows the three types of mid exit doors with the plug version on the far right.[18]

---

[17] *See* NTSB aviation investigation preliminary report attached as Ex. 5, page 4.
[18] *See id,* pages 4-5.

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 16

1
2
3
4
5
6
7
8
9



10    8.13    The MED plug was manufactured by Spirit AeroSystems Malaysia on March 24,

11   2023.

12    8.14    The MED plug was received by Spirit AeroSystems Wichita on May 10, 2023.

13    8.15    Upon receipt at Wichita, the MED plug was installed and rigged on the Aircraft's

14   fuselage (Spirit AeroSystems Fuselage Line 8789) before it was shipped to Boeing on August

15   20, 2023.

16    8.16    The Aircraft's fuselage arrived at Defendant Boeing's BA Factory in Renton,

17   Washington, on August 31, 2023.[19]

18    8.17    On September 1, 2023, the document NCR 1450292531 was created noting five

19   damaged rivets on the edge frame forward of the left MED plug.[20]

20
21
22
23

[19] *See id, page* 6.
[20] *See id,* page 15.

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

1
2
3
4
5
6
7
8
9
10



11

8.18    Defendant Boeing used a "travel work" model, where planes were assembled out

12  of order to keep the production line working.  This results in employees shuttling back and forth

13  to retrieve parts and equipment.[21]

14  8.19    Defendant Boeing was aware according to then Chief Executive Dave Calhoun

15  that travel work "creates opportunities for failure."

16  8.20    On September 19, 2023, Defendant Boeing instructed Defendant Spirit to

17  replace the rivets according to Non-Conformance Order 145-8987-RSHK-1296-002NC.

18  8.21    Photo documentation of the work was obtained and circulated within

19  Boeing that same day.  The photo shows evidence of the left MED plug closed with no

20
21
22
23

[21] https://www.msn.com/en-us/money/news/behind-the-alaska-blowout-a-manufacturing-habit-boeing-can-t-break/ar-BB1jGhf5

24

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 18

bolts in the three visible locations.  The aft upper guide track was covered with

insulation and not shown.[22]



8.22     Defendant Boeing commenced interior restoration of the Aircraft despite

the lack of retaining bolts on the left MED plug.[23]

---

[22] *See Ex.* 5, page 16.
[23] *See id*, page 17.

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 19



8.23    Defendant Boeing claims that in violation of its own manufacturing procedures, it has no formal log or other documentation of the repairs done that required opening the left MED door plug.[24]

8.24    In testimony to congress on April 10, 2024, the NTSB confirmed Defendant Boeing's claim that documentation does not exist.

---

[24] https://www.msn.com/en-us/money/companies/boeing-critic-says-he-shared-missing-737-bolt-records-with-fbi/ar-BB1lNVB5

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 20

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

8.25    A whistleblower testified in the same proceeding that the records do exist (perhaps through Defendant Boeing's informal database known as shipside action tracker) and "this is a criminal coverup."

8.26    The MED plug is primarily constructed of aluminum and is installed in the fuselage by means of two upper guide fittings and two lower hinge fittings.

8.27    The two upper guide fittings are shown in this Boeing diagram.



25

8.28    The two lower hinge fittings are shown in this Boeing diagram.

[25] *See Ex. 5,* page 7.

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 21

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777



[26]

8.29    The two upper guide fittings are located on the upper sides of the plug and engage with two upper guide rollers that are fixed to the upper sides of the fuselage opening as shown in this Boeing diagram.

---

[26] *See id,* page 7.



8.30    Two lower hinge guide fittings are fixed to the lower section of the plug and engage with the two lower hinge fittings that are attached to the bottom of the fuselage opening at the lower hinge bracket assemblies.[28]

8.31    Once the plug is in place, it is secured from moving vertically by a total of four bolts.  There is a bolt installed through each upper guide fitting and each lower hinge guide fitting.  Once these bolts are installed, they are secured using castle nuts and cotter pins. Outboard motion of the plug is prevented by 12 stop fittings (6 along each forward and aft edge) installed on the fuselage door frame structure.[29]

---

[27] See id, page 8.
[28] See id, page 6.
[29] See id, page 6.

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 23

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

8.32    The door plug is only intended to be opened for maintenance and inspection, which requires removing the vertical movement arrestor bolts and upper guide track bolts. The strap assemblies below the second stop pad from the top restrict the plug from opening further than 15 degrees.[30]

8.33    Defendant Alaska Air took the Airplane out of service on December 31, 2023 through January 1, 2024, because of issues with the front passenger entry and exit door.[31]

8.34    Defendant Alaska Air failed to inspect the left MED plug sufficiently if at all during the entry and exit door inspections and maintenance.

8.35    Defendant Alaska Air maintenance logs identified entries indicating that a pressure controller light had illuminated on three recent previous flights: the first earlier in the month, the second on January 3, 2024 its first day back in service, and the third on January 4, 2024.

8.36    Defendant Alaska Air should have visually observed during inspections that the left MED plug was gradually sliding upwards.

8.37    The NTSB noted that small upward movements of the door plug had left visible marks, and possibly created a gap between the panel and the fuselage pre-blowout.

8.38    Passengers on a previous flight heard a "whistling sound" coming from the area of the plug and reported it to a flight attendant who reported it to the pilots. But Defendant Alaska Air denies any record exists to confirm that report.

8.39    Defendant Alaska Air intended to perform a rigorous maintenance check of the Aircraft to be held overnight on January5.

---

[30] *See id*, page 6.
[31] https://www.nytimes.com/2024/03/12/us/politics/alaska-airlines-flight-door.html?smid=nytcore-ios-share&referringSource=articleShare

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 24

8.40    Instead of immediately grounding the Aircraft, Defendant Alaska Air left it in service but prohibited it from flying over large bodies of water.

8.41    Defendant Alaska Air failed to detect the missing and/or defective bolts or other problems with the left MED plug because it did not timely conduct adequate inspections and maintenance.

## IX.    THE INCIDENT

9.1    On January 5, 2024, Defendant Alaska Air designated the Aircraft for service as Flight 1282, without timely nor adequately inspecting and maintaining it prior to departure from Portland, Oregon.

9.2    171 passengers and six crew were on board. The interior seating layout of the Alaska Airlines Boeing 737-9 MAX aircraft is represented below.  The white "x" is where each plaintiff passenger sat on the Aircraft.[32]

9.3    The left MED plug is located at row 26 and is 59 inches high by 29 inches wide.
[33]

---

[32] Diagram of plaintiff passengers.
[33] *See Ex. 5*, page 3.

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 25

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

9.4     About ten minutes after takeoff at 16,000 feet, with a sudden loud explosive noise, the left MED plug detached and blew off leaving a gaping hole in the passenger compartment ("the incident"). [34]

9.5     The Aircraft was cleared to flight level 230 (23,000 feet).

9.6     The flight crew said their ears popped.

9.7     The captain said his head was pushed into the heads-up display and his headset was nearly pushed off his head.

9.8     The pilot monitoring said her headset was completely removed due to the rapid outflow of air from the flight deck.

9.9     The flight deck door was blown open.

9.10     In the aftermath of the blowout, it was very noisy and difficult to communicate. [35]

9.11     The force of the depressurization sucked C.T., a minor passenger, towards the opening ripping off his shoes, socks, and shirt.  It also sucked cell phones, other items, and much of the oxygen out of the aircraft.

9.12     The entire seatback of 26A as well as the headrests in seats 26A and 26B, were torn off and sucked out.

9.13     Paneling and window trim in several rows extending from the point of failure were damaged.

[34] *See id*, page 3.
[35] *See id*, page 3.

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15



16  9.14    Seat 25A was rotated out and aft toward the opening.

17  9.15    The seatback of 26A was rotated forward and outboard.

18

19

20

21

22

23

24

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 27

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

1



2

3

4

5

6

7

8

**Figure 7.** Photo of seat rows 25ABC and 26ABC.

9                                                                                                      36

10          9.16    The violence of the event and ensuing depressurization physically injured some

11  passengers.

12          9.17    The specter of the gaping hole caused most passengers to believe and fear they

13  were going to get sucked out of the plane or that the plane was going to crash.

14          9.18    A man stood and shouted, "*There's a fuckin' hole inside the plane! What the fuck*

15  *is that?!*"[37] A woman shouted, *"Oh my God! Someone's shirt was sucked out of the plane!*

16  *There's a hole in the plane!*"[38]

17          9.19    Some passengers tried to text or call loved ones to say goodbye in case the plane

18  did not make it.

19          9.20    Some passengers hyperventilated.

20          9.21    Some passengers dealt with bleeding from the ears and intense head pressure.

21          9.22    Some passengers tried to protect and save their traveling companions.

22  _____

[36] *See id*, page 9.

23  [37] https://www.cnn.com/2024/01/06/us/passengers-alaska-airlines/index.html

[38] https://www.oregonlive.com/portland/2024/01/are-we-going-down-passengers-on-alaska-airlines-flight-1282-

24  describe-fear-confusion.html

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 28

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

9.23    Some passengers sat still in mute shock.

9.24    The oxygen masks[39] dropped from the ceiling. But many panicked passengers could not get them to work.



9.25    The pilots declared an emergency and diverted. They descended under 10,000 feet MSL, and turned the Aircraft back toward Portland.

9.26    Pilots landed Alaska Air 1282 on Runway 28L without causing additional structural damage to the Aircraft.

---

[39] Photo copied from The Washington Post, attributed to Flight 1282 passenger Nicholas Hoch, available at https://www.washingtonpost.com/travel/2024/01/10/alaska-airlines-boeing-max-9-passenger-compensation/

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777



9.27    On behalf of Defendant Boeing, its CEO Dave Calhoun publicly declared the incident "our mistake"[40] and that the plug was not properly secured to the fuselage either during manufacture or otherwise while the aircraft was being built by Defendant Boeing, and/or its subcontractor, Defendant Spirit.[41]

9.28    On behalf of Defendant Boeing Calhoun told CNBC, "It escaped their factory but then it escaped ours too."

## X.    POST INCIDENT INSPECTIONS OF OTHER 737 MAXs

10.1    Following the incident and grounding of 737 MAXs Alaska Air found "some loose hardware was visible on some aircraft."

10.2    Similarly, United found "instances that appear to relate to installation issues in the door plug – for example, bolts that need additional tightening."

---

[40]*See, e.g.,* https://www.cbsnews.com/news/boeing-ceo-acknowledging-our-mistake-alaska-airlines-door-plug-blowout-dave-calhoun/
[41] *See, e.g.,* https://www.youtube.com/watch?v=7PngZBdCwJU

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 30

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

1    **XI.    POST INCIDENT NTSB PRELIMINARY INVESTIGATION FINDINGS**

2    11.1    The MED plug was recovered in a residential back yard and taken by the NTSB

3    for examination.[42]

4



NTSB investigators examine the door plug from Alaska Airlines flight 1282, a Boeing 737-9 MAX.

11.2    The outboard track bolt hole bore was undamaged.[43]

---

[42] *See Ex. 5,*, page 10.
[43] *See id.*, page 13.

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

1

2

3

4

5

6

7

8

9



10

11     11.3     The vertical movement arrestor bolt holes in the aft lower hinge guide fitting

were intact and undamaged.[44]

12

13

14

15

16     

17

18

19

20

21

22

23

[44] *See id*, page 14.

24

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

11.4    The four bolts that prevent upward movement of the MED plug were missing.[45]

## XII.    CAUSES OF ACTION

### A.  PRODUCT LIABILITY: CONSTRUCTION DEFECT – DEFENDANTS BOEING AND SPIRIT.

12.1    The Aircraft and its left MED plug are each a "product" and a "relevant product" within the meaning of the Washington Product Liability Act, Chapter 7.72 of the Revised Code of Washington.

12.2    The Aircraft and its left MED plug door were defective in construction within the meaning of RCW 7.72.030(2)(a), because when the product left the control of the manufacturer, the product deviated in some material way from the design specifications or performance standards of the manufacturer, or deviated in some material way from otherwise identical units of the same product line.

12.3    The Aircraft and its left MED plug were defective in construction within the meaning of RCW 772.030(2)(a), because they were unsafe to an extent beyond that which would be contemplated by the ordinary user.

12.4    Defendants Boeing and Spirit are liable under the doctrine of res ipsa loquitur.

### B.  BREACH OF COMMON CARRIER'S DUTY – DEFENDANT ALASKA AIR

12.5    Defendant Alaska Air is North America's fifth largest passenger airline, serving 44 million enplaned passengers in 2023.

12.6    26,000 people are employed by Defendant Alaska Air.

12.7    Defendant Alaska owns 230 Boeing 737 aircraft.  This includes 65 Boeing 737 MAXs.

---

[45] *See id,* page 15.

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

1    12.8    Defendant Alaska Air revamped its safety and maintenance departments

2 following its maintenance failures leading to the deaths of 88 people onboard Alaska Air Flight

3 261 on January 31, 2000.[46]

4    12.9    In August 2021, Defendant Alaska Air elected a new vice president of

5 maintenance and engineering to lead 1,346 employees, including the technical operations team,

6 and oversee the safety, compliance and operational performance of the airline's mainline fleet

7 including Boeing aircraft.[47]

8    12.10    600 employee members of the Aircraft Mechanics Fraternal Association

9 (AMFA) maintain Defendant Alaska Air's fleet of 737s.[48]

10    12.11    Defendant Alaska Air owed to its passengers on flight 1282 the duty to exercise

11 the highest degree of care consistent with the practical operation of its type of transportation and

12 its business as a common carrier.[49]

13    12.12    Defendant Alaska Air owed its passengers the duty to timely inspect and

14 properly maintain the Aircraft, particularly where notice of unusual or suspect conditions was

15 received.

16    12.13    Defendant Alaska Air owed its passengers the duty to protect them from harm

17 resulting from the misconduct of others, when such conduct was known or could reasonably be

18 foreseen and prevented by the exercise of the care required of a common carrier.

19

20

---

[46] https://www.ntsb.gov/investigations/AccidentReports/Reports/AAR0201.pdf
[47] https://news.alaskaair.com/newsroom/alaska-airlines-names-new-vice-president-of-maintenance-and-engineering-2/
[48] https://www.amfanational.org/index.cfm?zone=/unionactive/view_page.cfm&page=Alaska20Airlines
[49] Also under federal law, in prescribing regulations, the FAA must consider "the duty of an air carrier to provide service with the highest possible degree of safety in the public interest." 49 U.S.C. 44701(d)(1).  *See also* 14 CFR § 43.13 ("maintenance and preventative maintenance must be done in a manner that restores the aircraft to its original condition); 14 CFR § 43.15 (inspections must be performed to determine whether the aircraft meets all applicable airworthiness requirements).

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 34

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

1    12.14   Defendant Alaska Air knew that Defendant Boeing, the manufacturer of its 737

2  MAX fleet, was subject to the 2015 FAA Agreement.

3    12.15   Defendant Alaska Air knew that Defendant Boeing, the manufacturer of its 737

4  MAX fleet, was subject to the 2021 DPA arising out of the two mass fatality crashes in 2018

5  and 2019.

6    12.16   Despite knowing that its 737 MAX manufacturer had plead guilty to a criminal

7  fraud charge and faced massive penalties and federal oversight action, Defendant Alaska Air did

8  not initiate and enhance its own layers of quality control regarding the production of the

9  Aircraft.

10    12.17   Defendant Alaska Air failed to ensure that the Aircraft had been properly and

11  safely manufactured by Defendant Boeing.  Specifically, whether the Aircraft's fuselage and

12  left MED plug assemblies had been constructed using dedicated quality inspectors to ensure that

13  the parts were those specified by Boeing's design engineers, that the parts met design, material

14  and construction specifications, and the parts were installed correctly according to Boeing's

15  design.

16    12.18   Defendant Alaska Air failed to ground the Aircraft in order to engage in

17  maintenance occasioned by pressure system and door concerns previously described.  Instead

18  electing to subject passengers to the risk of death mitigated only by restricting the flight path of

19  the Aircraft.

20    12.19   Defendant Alaska Air is liable under the doctrine of res ipsa loquitur.

21    **C.  FRAUD**

22    12.20   All previous allegations in the complaint are incorporated by reference.

23

24

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 35

12.21   The "Boeing Problem Solving Model" is a longstanding method by which Defendant Boeing purports to identify problems and sustain solutions.  It is based on Apollo Root Cause Analysis methodology.[50]



12.22   Step One requires a comparison between the current situation, the ideal situation, and the gap between.  The end result is a "clearly stated end goal" with "measurable and challenging targets."

12.23   Step Two requires that Defendant Boeing ask "why" an event occurred—then with each answer repeat that question until "actionable root causes are identified."  Defendant Boeing uses RealityCharting root cause analysis software to chart root cases and actionable steps, an example of which is below:

---

[50] _See_ Ex. 6 attached hereto: Jemma Gaber and Jennifer MacKay, _Root Cause Analysis and the Boeing Problem Solving Model_ (ARMS Reliability), available at https://www.armsreliability.com/page/resources/whitepaper/root-cause-analysis-and-the-boeing-problem-solving-model

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 36

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777



12.24   Since 2015 as describe above, Defendant Boeing at the corporate level[51] has repeatedly identified specific deficiencies in its safety culture and quality control that led to foreseeable and inevitable failures, with disastrous consequences.  After each such disaster, Defendant Boeing conducted its root cause analysis to establish actionable root causes.  In addition to the above, these include but are not limited to:

      12.24.1   "Inspector shopping," where its employees were permitted to seek out inspectors that would sign off on work with little pushback.

      12.24.2   Defendant Boeing's decision to lay off thousands of experienced employees with institutional and industry knowledge, without sufficient succession planning.

      12.24.3   Insufficient training of new employees, despite requests for training by those employees.

---

[51] This includes officers, directors and executives based primarily out of Illinois at the time of the conduct in question.

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 37

12.24.4     Engineers in Washington are isolated in work and decision-making processes, are less supported, with little organized mentoring or knowledge sharing.

12.24.5     Isolation and decentralization of quality control—for overall corporate gain—have eroded and impaired training of newer employees on critical safety issues.

12.24.6     Confusion of employees at different work sites and groups about their respective responsibilities due to complex and constantly changing procedures and training.

12.24.7     Regular lapses in quality-control practices and documentation of work performed at multiple stages in manufacturing and assembly.

12.24.8     Acceptance of flawed components from suppliers, including Spirit, to adhere to a tight production schedule.

12.24.9     Lack of awareness of safety-related metrics at all levels of Boeing, including employees' difficulty distinguishing the differences among various measuring methods, their purpose, and outcomes.

12.24.10     Administrative decisions by Defendant Boeing eroded the role and influence of human factors.  These decisions included reorganization, decentralization, downsizing, and relocating the company's headquarters.

12.24.11     Defendant Boeing failed to provide guidance to employees of their roles and expectations in its publicly-announced SMS plan.

12.24.12     Defendant Boeing instructed its employees that the SMS plan was not to disrupt existing safety programs or systems, but was an "overarching" safety program.

12.25   Despite identifying these root causes and assuring regulators, airlines, and the public that Boeing would address these failures, Defendant Boeing corporate has repeatedly, knowingly, and systematically refused to implement solutions to these problems.

12.26   Instead, Defendant Boeing has placed public relations over any genuine implementation of solutions to root cause failures.

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

12.27   Defendant Boeing has repeatedly, knowingly, and systematically placed profits and corporate convenience over safety culture and best practices at the ground level of manufacturing, inspection, and maintenance.

12.28   Defendant Boeing knew it would not fully comply with the 2015 FAA Agreement at the time of its entry, including:

12.28.1    It would not perform sufficient audits of its suppliers to determine whether suppliers, specifically Defendant Spirit Aero Systems, were accepting incomplete work and whether improper acceptance was systemic.

12.28.2    It would not sufficiently increase focus and prioritization of its management sufficiently to ensure regulatory compliance specifically, noncompliance initiated by systemic improper acceptance of deficient work by Defendant Spirit Aero Systems.

12.29   Defendant Boeing in making its December 22, 2015 statement that it would "never compromise on our commitment to quality and compliance," had already compromised its commitment to quality and compliance, and would continue to do so.

12.30   Defendant Boeing's statements and agreement in Sections III, IV, and V were false and intended to mislead regulators, airlines, investors, and the traveling public including to Plaintiffs, to induce them to continue to travel on Boeing commercial aircraft, including the Aircraft.

12.31   Additionally, in the aftermath of the MAX crashes, in early 2021 Defendant Boeing created a new "Chief Safety Officer" position, which the company announced to employees as "broad control of internal safety initiatives and a seat on Boeing's executive council."[52]

---

[52] https://www.seattletimes.com/business/boeing-aerospace/boeing-creates-chief-safety-officer-job-in-wake-of-max-crashes/

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 39

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

12.32   In its inaugural Chief Aerospace Safety Officer Report, Defendant Boeing described "Our Safety Journey": "We implemented a series of meaningful changes to strengthen our safety practices and culture and bring lasting improvements to aerospace safety. It is a journey of continuous improvement and we are dedicated to making daily progress and holding ourselves accountable to the highest standards."

12.33   Yet as described above, Defendant Boeing not only failed to effectively implement the SMS plan by assigning roles and responsibilities to employee groups, it refused to adopt structural change.

12.34   In its 2022 Chief Aerospace Safety Officer ("CASO") Report, Defendant Boeing claims it "realigned its 50,000 engineers into a single integrated organization, reporting to the company's Chief Engineer."  And, "realignment results in an even greater emphasis on safety as it increases transparency, collaboration and accountability across all engineering designs and decisions."[53]

12.35   Despite Defendant Boeing touting integration and collaboration, the ACSAA Expert Panel found, "SMS operating procedure documents spoke of SMS as the overarching safety program but then also provided segregation of SMS-focused activities from legacy safety activities."

12.36   The Expert Panel found "Boeing's SMS documents do not effectively result in understanding by the average employee of their role in Boeing's SMS."

---

[53] https://www.boeing.com/content/dam/boeing/boeingdotcom/principles/safety/caso/caso-report-2022.pdf
Plaintiffs incorporate the report by reference as representations made by Boeing.

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 40

12.37   Additionally, the Expert Panel found "The reliance on dispersed engineering experience, expertise, and guidance does not appear to be coordinated or consistently monitored for sufficiency in numbers, experience, expertise, or communication channels."

12.38   In its CASO Report, Defendant Boeing claims its SMS Implementation process "involves training all employees on the value of an SMS, the approach to risk management and safety assurance, and the importance of a positive safety culture, which is the foundation of this framework."

12.39   Yet in its report the Expert Panel notes, "Boeing's SMS documents do not effectively result in understanding by the average employee of their role in Boeing's SMS.

12.40   The Expert Panel found a lack of awareness of safety-related metrics at all levels of the organization, and significant skepticism expressed by Boeing employees regarding the lasting power of the SMS implementation."

12.41   In its CASO report, Defendant Boeing states: "In 2021, employees completed SMS overview awareness training and completed more detailed training on the Safety Risk Management process by the first quarter of 2022."

12.42   The Expert Panel report reveals, "No measures of competency were included in the training measures."

12.43   In the wake of the 737 MAX 8 disasters in Indonesia and Ethiopia in 2021, Defendant Boeing issued a statement that after the 737 Max returned to service, "The in-service reliability is greater than 99%, and is consistent with other commercial airplane models."[54]

---

[54] Theo Leggett, *737 Max: Boeing refutes new safety concerns* (BBC News, Nov. 26, 2021) available at https://www.bbc.com/news/business-59420570

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 41

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

12.44   Defendant Boeing's statement and other similar statements were misleading and intended to conceal and evade whistleblower reports arising from the 737 MAX certification process, such as concerns identified by Joe Jacobsen, a former senior safety engineer at the FAA, regarding system safety analysis especially as to safety-critical items, and underlying deficiencies in Defendant Boeing's safety culture.[55]

 Defendant Boeing knowingly and intentionally refused to comply with the letter and/or intent of its promises in the DPA, and instead refused to reform its deficient safety and quality cultures, specifically, to address nonconformances by Defendant Spirit AeroSystems.

12.45   Defendant Boeing's concealment of its failure to reform its safety culture has been the subject of congressional testimony by whistleblowers and others following the incident in 2024.[56] A number of these whistleblowers have described alleged harassment and retaliation by Boeing for raising their safety concerns, in addition to Boeing simply ignoring safety concerns.[57]

12.46   If the facts as alleged by whistleblowers are true, then Boeing concealed such information from the FAA, the DOJ, Defendant Alaska Air and the general flying public, including Plaintiffs.

12.47   The NTSB has criticized Defendant Boeing for not cooperating in investigation of the incident; including failure to create, preserve and produce records that pertain specifically to work performed on the left MED plug.

---

[55] *See id.*

[56] Lauren Rosenblatt, *After months of hearing about safety from Boeing workers, a call for change* (Seattle Times, April 17, 2024), available at https://www.seattletimes.com/business/boeing-workers-still-scared-to-raise-safety-concerns-says-faa-appointed-experts/

[57] This includes the now-deceased whistleblower who warned of serious defects in the oxygen systems that provide breathing masks during emergencies.  https://www.bbc.com/news/business-68534703

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 42

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

12.48   Defendant Boeing intended that each of its misrepresentations and concealments described above, inhibit the FAA from exercising more direct oversight and enforcement to achieve the improvements Boeing promised in the 2015 FAA Agreement, the DPA, Defendant Boeing's representations related to ACSAA-SMS compliance, and otherwise.

12.49   Each such misrepresentation and/or concealment was made by a Defendant Boeing managing agent and/or other authorized agent acting within the course and scope of that agent's duties.

12.50   Each such misrepresentation and concealment bolstered Plaintiffs' confidence in Defendant Boeing aircraft. Without sufficient confidence, they would not have been aboard during the incident.

12.51   Defendant Boeing failed to disclose that the promises it had made in the 2015 FAA Agreement, the 2021 DPA, ACSAA-SMS compliance, and other assurances described above were not fully implemented such that numerous potentially serious and even deadly quality control problems were occurring.

12.52   Defendant Boeing was in a position of trust, confidence, influence and superiority over the passengers who chose to board the Aircraft, with respect to its safety culture and the characterization of that information.

12.53   Defendant Boeing had legal duties arising from the statutes and regulations governing its commercial aviation operations, the 2015 FAA Agreement, the DPA, and common law obligations; to disclose to the FAA, and the public, known deficiencies in its 737 MAX 9 products and their manufacturing, inspection and related safety processes, including that the left MED plug on Alaska Air Flight 1282 was not secured to the frame of the Aircraft.

SECOND AMENDED COMPLAINT FOR PERSONAL INJURIES, FRAUD, AND PUNITIVE DAMAGES - 43

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

12.54   Defendant Boeing knew or should have known, but refused to disclose to the FAA, the fact that the left MED on the Aircraft was not secured to the airframe.

12.55   Defendant Boeing knew or should have known but refused to disclose to the passengers aboard that flight the fact that the MED on the Aircraft was not secured to the airframe.

12.56   Defendant Boeing's concealments of its ongoing defective safety culture as described was designed to increase that corporation's profitability, the compensation of its managers, the value of its stock and other aspects of its market worth.

12.57   Defendant Boeing through its deliberately misleading statements as described, lulled Plaintiffs into a false sense of security that the Airplane was safe as represented. Plaintiffs justifiably relied on those representations and characterizations.

12.58   Because of Defendant Boeing's concealments above, Plaintiffs before boarding the Aircraft did not discover, and could not reasonably be expected to have discovered and avoided, the defects that led to this incident.

12.59   Defendant Boeing's actions and omissions as described above breached Boeing's duty not to commit fraud with respect to Plaintiffs.

### XIII.   INJURIES & DAMAGES

13.1   Plaintiffs passengers suffered physical injuries as a result of the incident, including but not limited to concussion, soft tissue spine injury, ear drum injury, seizure, headache, oxygen deprivation, wind rash, bruising.

13.2   Plaintiff passengers suffered mental harm and emotional distress, including but not limited to terror, fear of death or serious injury, PTSD, anxiety, and Aerophobia (fear of flying).

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 44

13.3    Phobia is an anxiety disorder under DSM-5.

13.4    Panic attacks may result from Aerophobia including chills, dizziness and light headedness, excessive sweating, nausea, dyspnea, trembling or shaking and dyspepsia.[58]

13.5    Aerophobia can result in missing family vacations or refusing to travel for work. Or insisting on other modes of transportation even if slower and less convenient. Others may become obsessed with learning about plane safety.

13.6    Plaintiffs who did not suffer physical injury were within the scope of foreseeable harm created by Defendants' conduct, had a reasonable psychological reaction under the circumstances, and their symptoms of distress are manifested by objective symptomology.

13.7    Plaintiffs suffered special damages, including but not limited to medical expenses past and future, lost wages, loss of earning capacity, travel expenses, and personal property damage.

13.8    Plaintiffs suffered general damages including physical and mental pain and suffering, past and future.

13.9    Plaintiff-spouses suffered damages for loss of consortium.

13.10    Plaintiff-parents suffered damages pursuant to RCW 4.24.010.

13.11    Plaintiffs suffered other general and special damages to be proven at the time of trial.

## XIV.    APPLICATION OF ILLINOIS PUNITIVE DAMAGES

14.1    At inception, Defendant Boeing was headquartered in Seattle, Washington, where manufacturing, assembly, inspection and repair had and continue to take place.

14.2    After 85 years, Boeing moved its headquarters to Chicago, Illinois in 2001, and enjoyed the benefits of conducting business under the laws of and in the State of Illinois.

---

[58] https://my.clevelandclinic.org/health/diseases/22431-aerophobia-fear-of-flying

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 45

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

14.3    The decision to separate corporate management from the company's work was the start of Boeing's ongoing production problems. Boeing prioritized profit over safety.

14.4    Defendant Boeing remained headquartered in the State of Illinois until late 2022, and then maintained a "significant presence" there.

14.5    Washington State has the most significant relationship to Boeing's defective construction of its aircraft at the Renton, Washington plant.

14.6    However, the root cause of this incident was corporate fraud and misconduct at Boeing's headquarters in Illinois.  At the corporate level,[59] Boeing knew of actual and potential defects and failed manufacturing practices in the Boeing 737-MAX 9, but knowingly and intentionally concealed them from the FAA, from the Department of Justice, from airlines including Defendant Alaska Airlines, and from the public.

14.7    Washington has no interest in protecting companies from punitive damages that commit fraud or egregious misconduct in other states.

14.8    Illinois has the most significant relationship to, and greatest interest in, punishment and deterrence of Defendant Boeing's fraudulent, intentional, willful and wanton, or otherwise egregious misconduct and practices occurring there and impacting injured victims nationwide. *See Erickson v. Pharmacia LLC;[60] Singh v. Edwars Lifesciences Corporation*, 151 Wash. App. 137, 210 P.3d 337 (Div. 1 2009).

14.9    Based on the conduct described herein, Plaintiffs are entitled to an award of punitive damages under Illinois law.[61]

---

[59] Including officers, directors, and executives based in Illinois.
[60] Div. 1 Cause No. 83287-5-I: https://www.courts.wa.gov/opinions/pdf/832875.pdf
[61] *See* Illinois Pattern Instruction No. 35.

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 46

## XV.    PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request this Court grant them the following relief against Defendants jointly and severally:

    a.   Judgment of liability against Defendants.

    b.   Special and general damages in amounts to be proved at trial.

    c.   Punitive damages against Defendant Boeing.

    d.   Pre- and post-judgment interest on any judgment awarded to Plaintiffs to the maximum extent allowed by law;

    e.   Such other and further relief as this Court deems fit and just to award.

DATED this 22nd day of May, 2024.

STRITMATTER KESSLER KOEHLER MOORE

*/s/ Karen K. Koehler*
Karen K. Koehler, WSBA #15325
Andrew Ackley, WSBA #41752
Daniel R. Laurence, WSBA#19697
Brad J. Moore, WSBA#1802
Melanie Nguyen, WSBA #51724
Debora Silberman, WSBA #59302

3600 – 15th Avenue West, Suite 300
Seattle, WA  98119
Telephone: 206.448.1777
Facsimile:  206.728.2131
karenk@stritmatter.com
andrew@stritmatter.com
dan@stritmatter.com
brad@stritmatter.com
melanie@stritmatter.com
deboras@stritmatter.com

Attorneys for Plaintiffs

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 47

STRITMATTER KESSLER
KOEHLER MOORE
3600 15th Ave W, Ste. 300
Seattle, WA 98119
Tel: 206.448.1777

## <u>DECLARATION OF SERVICE</u>

I hereby certify that on this date, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which in turn automatically generated a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system.

Dated this 22nd day of May, 2024, at Cle Elum, Washington.

/s/ *Patti Sims*
Patti Sims
Paralegal

SECOND AMENDED COMPLAINT FOR PERSONAL
INJURIES, FRAUD, AND PUNITIVE DAMAGES - 48